UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

GREATER INDIANAPOLIS CHAPTER OF      )
THE NATIONAL ASSOCIATION FOR          )
THE ADVANCEMENT OF COLORED            )
PEOPLE, et al.,                                      )
                                                           )
                         Plaintiffs,                 )   CASE NO. 1:09-cv-0175-SEB-DML
          v.                                             )
                                                           )
GREGORY A. BALLARD,                         )
CITY OF INDIANAPOLIS, and                 )
MICHAEL T. SPEARS,                            )
                                                           )
                         Defendants.              )

## Order on Motion for Partial Judgment on the Pleadings

This matter is before the court on the motion for partial judgment on the pleadings of

defendants City of Indianapolis, Indianapolis Mayor Gregory A. Ballard, and Chief of the

Indianapolis Metropolitan Police Department, Michael T. Spears, (collectively, "the City").

(Dkt. 30).  The plaintiffs are the Greater Indianapolis Chapter of the National Association for the

Advancement of Colored People ("NAACP") and individual members of the Indianapolis

Metropolitan Police Department ("IMPD") and the Indianapolis Fire Department ("IFD").   The

plaintiffs allege in their Amended Complaint (Dkt. 45) that their respective departments use

promotion criteria and procedures that discriminate against them and other African-Americans.

The City's motion for partial judgment on the pleadings includes challenges to most of the

plaintiffs' claims.  The City moves to dismiss: (1) all claims of the NAACP for lack of standing;

(2) all state constitutional claims seeking damages; (3) certain plaintiffs' Title VII disparate

treatment claims for failure to exhaust administrative remedies; (4) all plaintiffs' Title VII

disparate impact claims; (5) all section 1981 claims against the City; (6) all disparate impact

claims brought under section 1983; (7) one plaintiff's hostile work environment claim; (8) one plaintiff's Age Discrimination in Employment Act (ADEA) claim; (9) certain Title VII claims for failure to obtain right to sue letters; (10) individual and official capacity claims against Mayor Ballard and Chief Spears; and (11) Count II of the Amended Complaint relating to pension benefits.  The City does not challenge, at this stage, certain plaintiffs' disparate treatment claims under Title VII and section 1983 or the state constitutional claims to the extent they seek prospective injunctive relief.  The City's motion for partial judgment on the pleadings is GRANTED IN PART and DENIED IN PART.

## Analysis

Fed.R.Civ.P. 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial.  *Cuatle v. Torres*, 2010 WL 2545627 at *1 (S.D. Ind. June 15, 2010).  A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Fed.R.Civ.P. 12(b)(6).  *Id.*  That analysis in turn implicates Fed.R.Civ.P. 8, *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 619 (7th Cir. 2007), which requires a "short plain statement of the claim showing that the pleader is entitled to relief."  "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  And a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 1949.

2

Two principles guide these determinations.  First, the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  *Iqbal*, 129 S.Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id*. at 1950.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id*. (quoting Fed.R.Civ.P. 8(a)(2)).

I.      **The NAACP's Standing to Assert Claims**

Before addressing the substantive merits of the City's motion for judgment on the pleadings, the court must first determine whether the NAACP has standing to invoke the jurisdiction of this court.  *See Disability Rights Wisconsin, Inc. v. Walworth County Bd. of Supervisors*, 522 F.3d 796, 800 (7th Cir. 2008).  The NAACP has the burden of establishing its standing.  *Id.*   Both the City and the NAACP focus on whether the NAACP has associational standing.[1]

The City argues that the NAACP does not have associational standing because it has not alleged that any of the individually named plaintiffs is a member of the NAACP.   (Defendants' Opening Brief at 7 (Dkt. 33) ("Defs.' Br.")).  The NAACP contends that it has associational standing because its claims advance interests central to its mission, and it is seeking, in part, injunctive relief.  (Plaintiffs' Opposition Response Brief at 6-7 (Dkt. 57) ("Pls.' Resp.")).

---

[1]  Neither the Amended Complaint nor the plaintiffs' Response Brief alleges that the NAACP itself has suffered an injury in fact caused by the City's conduct.  *See Disability Rights Wisconsin,* 522 F.3d at 801 (association failed its burden to show it had standing to sue in its own right where  the association did not allege in its complaint any injury in fact to itself).

Although associational standing does not require that a member of the association is also a named plaintiff, it is not enough that the association is merely advancing its core interests and seeking injunctive relief.

An organization has associational standing to sue on behalf of its members only if it satisfies each of three requirements, known as the *Hunt* requirements, derived from the Supreme Court's decision in *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333 (1977):

(1)  the organization's members would have standing to sue in their own right;

(2)  the interests the organization seeks to protect are germane to its purpose; ***and***

(3)  neither the claims nor the requested relief requires the participation of individual members in the lawsuit.

*Disability Rights Wisconsin,* 522 F.3d at 801-02 (citing *Hunt,* 432 U.S. at 343); *Sanner v. Board of Trade,* 62 F.3d 918, 922 (7th Cir. 1995) (association "must satisfy" all three prongs of *Hunt*). *Hunt's* first and second prongs for associational standing are of Constitutional dimension, and are required to satisfy Article III's limit on federal jurisdiction to "Cases" or "Controversies." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 555-56 (1996).  The third prong, addressing whether the claims asserted or the requested relief requires participation by the organization's individual members, falls within prudential limits on federal jurisdiction.  *Id.* at 555.

As explained below, it is clear that the NAACP has not satisfied all three *Hunt* prongs. The City's motion for judgment on all claims brought by the NAACP is therefore GRANTED.

**A.  The NAACP does not satisfy the first *Hunt* factor.**

The first prong of *Hunt* reflects an Article III requirement that an associational suit be representative – that is, the association must establish an "actual injury" to its members. Promoting only abstract interests is not enough to establish associational standing where the

association has not alleged that its members could have sued in their own right.  In *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40 (1976), the Supreme Court held that the requirements for associational standing are met only when plaintiff organizations

> can establish [their] standing as representatives of those of *their members* who have been injured in fact, and thus could have brought suit in their own right.

(emphasis added).  *Hunt* addresses the Article III standing requirements of injury in fact, causation, and redressability "by requiring an organization suing as a representative to include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association."  *Brown Group*, 517 U.S. at 555.  To "include at least one member" does not mean that the member who could have brought suit on her own must be a party to the action or named in the complaint.  Instead, a member on whose behalf suit is brought may be "unnamed by the organization. . . ."  *Disability Rights Wisconsin,* 522 F.3d at 802 (citing *Doe v. Stincer,* 175 F.3d 879, 882 (11th Cir. 1999)); *Indiana Protection and Advocacy Services Comm'n,* v. *Commissioner, Indiana Dep't of Correction,* 642 F.Supp.2d 872, 879-880 (S.D. Ind. 2009) (Seventh Circuit does not require that the organization name the members suffering injury).  At the least, however, the complaint must sufficiently allege injury in fact to the organization's members caused by the defendants' conduct and capable of being redressed by a favorable decision.  *Disability Rights Wisconsin,* 522 F.3d at 802; *Indiana Protection,* 642 F.Supp.2d at 879.

The NAACP has not alleged that any of its members suffered harm as a result of the City's conduct nor has it alleged that it has members who are officers of the IMPD or IFD. Rather, it merely argues in conclusory terms that "[The NAACP] is extremely likely to have

members affected by the outcome of the present litigation." (Pls.' Resp. at 8). This does not satisfy the first requirement of *Hunt.*

**B. Assuming that the NAACP satisfies the second *Hunt* factor, that alone does not suffice to establish standing.**

The NAACP's argument in favor of standing focuses on the strength of its mission to eliminate racial discrimination. The Amended Complaint alleges, and the City does not challenge, that the NAACP's fundamental mission is advancing and improving the political, educational, social, and economic status of minority groups, and eliminating racial prejudice, including through litigation. (Pls.' Resp. at 6-7; Amended Complaint, ¶¶ 12-13). Assuming that that showing satisfies the second requirement of *Hunt*—that the interests the NAACP seeks to protect by this lawsuit are germane to the NAACP's purpose—it is not enough to confer standing.

The NAACP relies on *Peick v. Pension Benefit Guaranty Corp.*, 724 F.2d 1247, 1259 (7th Cir. 1983), in which the Seventh Circuit noted that "[a]ssociational standing is particularly appropriate when the association is seeking to represent interests which are central to the purpose of the organization." The NAACP has misconstrued the Seventh Circuit's observation as supplanting the requirements of *Hunt*, but this observation is simply a restatement of the second of the *Hunt* factors. *Peick* does not eliminate the other requirements of *Hunt*. *See id.* at 1259.

**C. The fact that the NAACP is seeking injunctive relief does not obviate the need to meet all three *Hunt* requirements.**

*Hunt's* third requirement, that the asserted claims and the requested relief do not require the participation of individual members in the lawsuit, consistently has been applied to deny associational standing to assert claims for monetary relief, except where federal legislation authorizes an organization to sue for its members' damages. *Brown Group,* 517 U.S. at 554 and 558 (1996) (holding that prong three of the *Hunt* associational standing test is a prudential

6

limitation on jurisdiction that Congress can abrogate); *Sanner v. Board of Trade,* 62 F.3d 918, 923 (7th Cir. 1995) (when suit requires calculation of individual members' damages, prong three is not met). Thus, the NAACP's damages claims falter at prong three as well.

The NAACP's argument that it has standing because it also seeks prospective, injunctive relief ignores that all *Hunt* prongs must be met, not just one or two of them. In its brief, the NAACP quotes part of a sentence from *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 602-03 (7th Cir. 1993), for this proposition: "[p]rospective relief will usually inure to the benefit of the members actually and thus individualized proof of damages is often unnecessary." First, even the quoted excerpt on which the NAACP relies contemplates that the injunctive relief will benefit "members," and the NAACP has not shown that the City's wrongful conduct has harmed its members or that its members could have brought the suit. Second, the NAACP misconstrues the decision, because the Seventh Circuit was only explaining, in the context of the third element of the *Hunt* test, that when injunctive relief is sought, it is less likely to require the participation of individual members. Contrary to the NAACP's assertion, *Retired Chicago Police Ass'n* provides no support for the position that an association need not establish all the elements of *Hunt* if it is seeking injunctive relief.

Because the NAACP has not met each of the *Hunt* prongs, it does not have associational standing and the court does not have jurisdiction over its claims.

## II. **Claims Based on the Indiana Constitution**

Counts I and IV of the plaintiffs' Amended Complaint allege that the City's promotion processes have a discriminatory impact on minority police officers (Count I) and firefighters (Count IV) and violate Article I, Sections 12 and 23 of the Indiana Constitution, for which the

plaintiffs seek damages and injunctive relief.[2]  The City maintains that the plaintiffs may seek only injunctive relief for alleged violations of the Indiana Constitution because (1) there is no private right of action for damages for a violation of either Section 12 or 23; and (2) even if there were a private right of action for damages, the plaintiffs' state constitutional claims are subject to the Indiana Tort Claims Act ("ITCA"), with which the plaintiffs did not comply.  The plaintiffs ask the court to imply a civil damages remedy for violations of the Indiana Constitution, and—acknowledging that any tort claim requires compliance with the ITCA—assert that the individual plaintiffs' EEOC charges constituted "substantial compliance" with the notice requirements of the ITCA.

Indiana's courts have not recognized a civil damages remedy for alleged violations of Sections 12 and 23 of the Indiana Constitution. Section 12, known as the "open courts" provision, states:

> All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law.  Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.

IND. CONST. art. I, § 12. [3]  Section 23, the privileges and immunities provision, states:

---

[2]  Counts I and IV also cite 42 U.S.C. § 1981 as a legal basis for relief.  The plaintiffs' section 1981 claims are addressed in Section V of this Order.

[3]  Neither the plaintiffs' Amended Complaint nor their opposition to the City's Rule 12(c) motion explains their theory for relief under Section 12.  The Indiana Supreme Court has been clear that Section 12 does not create new substantive rights; rather, its promise is that the courts will be open when the law otherwise creates a right to recover for harms done.  *McIntosh v. Melroe Co.,* 729 N.E.2d 972, 977, 979 (Ind. 2000) ("If the law provides no remedy, Section 12 does not require that there be one."); *see also Smith v. Indiana Dep't. of Correction,* 871 N.E.2d 975, 985 (Ind. Ct. App. 2007) (citing *Blanck v. Ind. Dep't of Corr.,* 829 N.E.2d 505, 511 (Ind. 2005)) (Section 12 does not provide a substantive right to bring a particular cause of action to remedy an asserted wrong).

> The General Assembly shall not grant to any citizen, or class of citizen, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens.

IND. CONST. art. I, § 23.

In *Cantrell v. Morris,* 849 N.E.2d 488 (Ind. 2006), the Indiana Supreme Court answered a certified question from the Northern District of Indiana regarding private rights of action for damages under Indiana constitutional provisions.  The Court declined to address the broad question whether a private right of action should be implied for any or none of Indiana's constitutional provisions.  Instead, it stated that at least where a state tort law remedy is generally available to redress a purported constitutional wrong, "it is unnecessary to find a state constitutional tort."  *Id.* at 506.  The court further recognized that "[t]here is no explicit language in the Indiana Constitution providing any specific remedy for violations of constitutional rights." *Id.* at 499.

Going back to at least 2000, and after *Cantrell,* the judges of this District have refused to recognize implied rights of action under the Indiana Constitution.  *See, e.g., Boczar v. Kingen,* 2000 WL 1137713 at *24-25 (S.D. Ind., Mar. 9, 2000), *aff'd.,*6 Fed. Appx. 471 (7th Cir. 2001); *Baker v. Washington Bd. Of Works,* 2000 WL 33252101 at *8 (S.D. Ind., June 8, 2000); *Willits v. Wal-Mart Stores, Inc.,* 2001 WL 1028778 at *15 (S.D. Ind., July 30, 2001);  *Estate of O'Bryan v. Town of Sellersburg,* 2004 WL 1234215 at *21 (S.D. Ind., May 20, 2004); *McConnell v. McKily's,* 573 F.Supp.2d 1090, 1103 (S.D. Ind. 2008).

The undersigned judge agrees with her colleagues that recognizing an implied right of action is a step to be taken, if at all, by the Indiana courts and not the federal courts. *E.g., McConnell v. McKily's,* 573 F.Supp.2d 1090 (S.D. Ind. 2008); *Estate of O'Bryan,* 2004 WL 1234215 at *21 (S.D. Ind., May 20, 2004).  The court declines to find that a private right of

action exists for purported violations of Sections 12 and 23 of the Indiana Constitution.  For this

reason, it is not necessary to address the City's alternative ground for dismissing plaintiffs' state

constitutional damages claim – that the plaintiffs' EEOC charges do not constitute substantial

compliance with the ITCA.

The court GRANTS the City's request to dismiss all claims for damages under the

Indiana Constitution, leaving only claims for injunctive relief.

## III.      Title VII Claims

### A.  The Title VII claims of some plaintiffs must be dismissed for failure to exhaust their administrative remedies.

The City argues that the Title VII claims of particular plaintiffs must be dismissed for

failure to exhaust administrative remedies because their EEOC charges were untimely or did not

allege adverse employment actions.  In addition, the City maintains that several other plaintiffs'

claims should be dismissed because they have not yet received right to sue letters from the

EEOC.  Finally, the City argues that no plaintiffs can maintain disparate impact claims because

their EEOC charges did not assert them.  The court will address in turn below each of these

arguments.

#### 1.  Certain plaintiffs who allege a failure to promote did not timely file charges with the EEOC.

Congress declared in the text of Title VII that the limitations period for filing an EEOC

complaint commences with the date of the "alleged unlawful employment practice."  42 U.S.C. §

2000e-5(e); *see Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980).  As the Supreme

Court made clear, the claimant must file his EEOC suit within the limitations period from the

time of the alleged "unlawful employment practice."  42 U.S.C. § 2000e-5(e); *see Ricks*, 449

U.S. at 259.  The limitations period serves the dual purposes of guaranteeing the protection of

civil rights laws to claimants who promptly assert their rights, while also protecting employers from defending stale claims. *Ricks*, 449 U.S. at 256-57.

In Indiana, a claimant must file an EEOC charge within 300 days after the allegedly unlawful practice occurred. *See Oliver-Pullins v. Associated Material Handling Industries, Inc*., 2004 WL 2137624 at *8 (S.D. Ind. July 20, 2004). Alleged actions that occurred prior to the limitations period generally cannot form the basis for a Title VII claim. *Bannon v. University of Chicago*, 503 F.3d 623, 628 (7th Cir. 2007).

The point at which the City in its promotions process tabulated the points and notified a particular plaintiff of the denial of promotion is the alleged adverse employment action that is discrete and actionable. *See Davidson v. Citizens Gas & Coke Utility*, 470 F.Supp.2d 934, 949-50 (S.D. Ind. 2007). Each plaintiff had 300 days from that notification to file their EEOC charges. For plaintiffs Grissom, Young, Rowley, Moore, and Bell, their EEOC charges show that they did not file them within 300 days of being notified of the adverse action.[4] The failure to file their EEOC charges within 300 days of the adverse action subjects their Title VII claims to dismissal. These plaintiffs contend, however, that the continuing violation doctrine serves to save their claims.

The continuing violation doctrine is intended to address the cumulative impact of many discrete acts, some of which occur outside the limitations period and none of which are necessarily actionable in themselves. *Reese v. Ice Cream Specialties, Inc*., 347 F.3d 1007, 1012 (7th Cir. 2003). The continuing violation doctrine applies only to remediate hostile work environment or pattern-and-practice claims. *Davidson*, 470 F.Supp.2d at 944. The continuing

---

[4] Grissom, Young, Rowley, Moore, and Bell filed their EEOC charges on January 20, 2009, October 27, 2008, October 28, 2008, October 24, 2008, and October 27, 2008, respectively, based on acts occurring in 2002 (Young), 2006 (Rowley, Moore, Bell) and 2007 (Grissom). (*See* Answer Exs. U, A, B, C, and D).

violation doctrine does not apply to adverse employment actions that are actionable as discrete events themselves.

Plaintiffs claim that the continuing violation doctrine saves their claims because the alleged discrimination in promotion has continued and prevents them from re-applying for promotion.  The Supreme Court has specifically rejected this argument.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), addressed the question of when an unlawful employment practice "occurred" for purposes of the limitations period.  The Court declared that, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened'."  *Id*. at 110.  It then reiterated, "We have repeatedly interpreted the term 'practice' to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts."  *Id*. at 111.

The substance of each of these plaintiffs' charges is discrimination based on a failure to promote.  The failure to promote was the discrete act that would give rise to Title VII liability.  In *Morgan*, the Supreme Court categorized "failure to promote" as a discrete incident of discrimination to which the continuing violation doctrine does not apply.  *See Morgan*, 536 U.S. at 113.  *See also Reese*, 347 F.3d at 1012.  Thus, the continuing violation doctrine has no application to the plaintiffs' failure to promote claims.

The cases that plaintiffs cite in urging application of the continuing violation doctrine do not advance their position.  (Pls.' Resp. at 10).  *Patterson v. Youngstown Sheet and Tube Co*., 475 F.Supp. 344, 356 (N.D. Ind. 1979), did not find a continuing violation, and in fact, the court dismissed certain putative class members who could not have timely filed their EEOC charges.  In *Davidson v. Citizens Gas & Coke Utility,* 470 F.Supp.2d 934 at 950 (S.D. Ind. 2007), the court did not apply the continuing violation doctrine and found that the plaintiff had alleged a discrete act of discrimination.  The opinion in *Hardin v. S.C. Johnson & Son, Inc*., 167 F.3d 340, 344-45

(7th Cir. 1999), held that the continuing violation doctrine did not apply when the plaintiff believed that she was the victim of harassment long before she filed her administrative complaint.

Because plaintiffs Grissom, Young, Rowley, Moore, and Bell did not timely file their EEOC charges, the court GRANTS the City's motion to dismiss all their Title VII claims.

### 2. The EEOC charges of Williams and Mills failed to allege an adverse employment action.

The City moves to dismiss the claims of plaintiffs Williams and Mills on the grounds that their EEOC charges do not allege any adverse employment action.[5]  In response, these plaintiffs contend they "have effectively been chilled from even seeking promotion because of the pattern and practice that the Defendants have continued."  (Pls.' Resp. at 10).  They too, therefore, rely on a continuing violation theory to supply the adverse employment action missing from their EEOC charges.

Plaintiff Mills's EEOC charge states:

> I began my employment with the Indianapolis Metropolitan Police Department on [date], as a patrolman.  I am currently a patrolman and my supervisor is [rank and name].  I believe that I and other African-American officers have been discriminated against because of our race, African-American, in violation of Title VII of the Civil Rights Act of 1964, as amended, my allegations regarding this discrimination are listed below.

(Defs.' Answer, Ex. Q).

The referenced allegations concerning discrimination state:

> Claimant is part of a group of African-Americans for which the racial make-up of the Indianapolis Metropolitan Police Department is disproportionately low as compared to the racial make-up of the community of Marion County.

---

[5]  The City's motion also seeks dismissal of the claims of plaintiffs Toliver, VanCleave, Moon, and Reynolds.  These four plaintiffs, along with plaintiffs Allison and Middleton, have since dismissed their claims without prejudice.  (*See* Dkt. 107, 131).

> Claimant is part of a group of African-Americans of which the racial make-up of the Indianapolis Metropolitan Police Department supervisory ranks is disproportionately low as compared to the racial make-up of supervisory ranks of Caucasian descent on the Indianapolis Metropolitan Police Department and the racial make-up of the community of Marion County.
>
> Claimant is a part of African Americans for which the racial make-up of the officers on Indianapolis Metropolitan Police Department in investigative or specialty units is disproportionately low as compared to officers of Caucasian descent.

(*Id.*).

Plaintiff Williams's EEOC charge, dated October 24, 2008, asserts that she has "been denied promotional opportunities because of testing and promotional criteria that is irrational and highly subjective which results in a racially biased impact." (Defs.' Answer, Ex. O). Her charge does not identify any particular promotional opportunity denied her, or indicate when any such denial may have occurred.[6]

None of the cases plaintiffs rely upon (which were discussed in the previous subsection) supports the application of the continuing violation doctrine to allow recovery when the plaintiff has not experienced and alleged a discrete, adverse employment action. The EEOC charges of these plaintiffs who claimed they were "chilled" from seeking promotion are nothing more than general charges that do not preserve any claims. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (general "open-ended charge" of racial discrimination without specifying adverse employment action is insufficient to preserve any claim).

---

[6] According to the plaintiffs' response brief, Williams was not in fact denied a promotion; instead, she is claiming to have been "effectively 'chilled' from applying for promotions at all." (Pls.' Resp. at 10).

14

The court therefore finds that the EEOC charges of Williams and Mills did not embrace or preserve Title VII claims, and accordingly, GRANTS the City's motion to dismiss all their Title VII claims.

### 3. The court will not dismiss at this time the claims of plaintiffs who had not yet received their right to sue letters.

The City also moves to dismiss the Title VII claims of several plaintiffs who purportedly had not yet received right to sue letters at the time they filed their complaint.  (Defs.' Br. at 10). The plaintiffs respond that all plaintiffs shortly should receive their letters.  (Pls.' Resp. at 11). Indeed, the City's reply acknowledges that some plaintiffs received their letters between the time the motion for partial judgment on the pleadings was filed and the City filed its reply. (Defs.' Reply at 10 n. 2).  Because it is likely that most, if not all, of these plaintiffs now have obtained right to sue letters, the court directs the City to file a separate motion to raise this issue for any plaintiffs for whom this deficiency may still exist.

### 4. The plaintiffs' EEOC charges did not assert disparate impact claims.

The City argues that the plaintiffs cannot bring Title VII disparate impact claims because their EEOC charges did not allege such.  Unfortunately, plaintiffs have not responded to this argument.  This failure to respond alone is a sufficient reason for dismissing their disparate impact claims.  *Mink v. Barth Elec. Co., Inc*., 685 F.Supp.2d 914, 935 (S.D. Ind. 2010) (failure to respond to arguments results in waiver).  The application of waiver is especially appropriate here.  This case consists of many plaintiffs each of whom filed individual complaints, and a discussion of the charges by counsel was thus necessary.  Failure to respond forces a court into the inappropriate role of an "'auxiliary lawyer.'" *Sweeney v. West*, 149 F.3d 550, 555 n.3 (7th Cir. 1998) (quoting *Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225, 230 (7th Cir. 1992)).

Even if the plaintiffs had not waived their disparate impact claims by failing to respond to the City's argument, an examination of the merits of the claims reveals a failure to exhaust administrative remedies.  Title VII of the Civil Rights Act allows individuals who have suffered discrimination to seek relief by bringing suit, but only after exhausting administrative remedies. *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009).  Exhaustion is a condition precedent to bringing a claim under the Act, and generally, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in the EEOC charge.  *Id*.

Although each of the plaintiffs filed his or her own EEOC charge, those charges contain certain common language, make nearly identical allegations, and appear to have been drafted with the assistance of counsel.  Each charge consists of the form filed with the Indiana Civil Rights Commission ("ICRC").  Specificity and detail is expected when counsel represents a plaintiff in the filing of EEOC charges.  *Rush v. McDonald's Corp*., 966 F.2d 1104, 1110 (7th Cir. 1992); *see also Teal*, 559 F.3d at 691; *Welch v. Eli Lilly & Co*., 2009 WL 2461119 at *5 (S.D. Ind. 2009) (finding that the typical rule of applying a liberal construction to EEOC charges is inapplicable when the charges are drafted by counsel).  Regardless of how liberally they are read, however, the EEOC charges in this case allege no more than disparate treatment.

The ICRC form for each claimant contains a narrative stating his agency of employment, his employment title, his beginning employment date, the date he applied for promotion, the promotion for which he applied, the fact that he was denied promotion, and the identical (or strikingly similar) allegation common to all of the charges:  "I believe that I have been denied promotional opportunities because of testing and promotional criteria that is irrational and highly subjective which results in a racially biased impact."  Attached to almost all of the ICRC forms are "EEOC Complaint Allegations" that also are nearly identical among all claimants.  In fact,

16

two claimant firefighters who allege that they were denied promotions in rank in the fire

department include allegations about the police department promotions process, which suggests

that the allegations were not only prepared by counsel, but were standard templates.  (*See* Defs.'

Answer, Exs. U, V).  Most of the police officer claimants, in addition to the "EEOC Complaint

Allegations," also include separate "EEOC Complaint Allegations II."

      A review of the allegations convinces us that plaintiffs have not exhausted administrative

remedies with respect to their disparate impact claims.  Another decision from this district,

*Welch v. Eli Lilly & Co*., 2009 WL 2461119 at \*1, is particularly instructive. In *Welch*, Judge

Young had previously dismissed disparate impact claims from the suit after he had found that the

administrative charges had not preserved a disparate impact claim because the claimants had

failed to allege a "specific neutral employment policy that disproportionately affect African

American employees, an essential element of a disparate impact claim."  *Id*. at \*3.   In an attempt

to correct the deficiencies, the plaintiffs named new class representatives who had filed new

administrative complaints.  Each charge contained identical allegations:

> The excessive subjectivity of Lilly's Performance
> Management-Annual Review Process, has had a disproportionate
> negative impact on African-Americans at Lilly in terms of pay and
> promotion.  Specifically, the annual ratings govern pay raises and
> the ability to obtain in-line and other promotions.  Predominantly
> white Lilly supervisors have unfettered discretion to rate
> employees on the reviews; these ratings dictate employee
> compensation and promotions.  As a result, this policy, even
> though not racist on its face, has a disparate impact on African
> Americans in pay and promotion opportunities, and has caused
> them to be historically considered second class employees at the
> Company.

*Id*. at \*6, quoting *New Class Representatives' EEOC Charges*, ¶ 2.  Judge Young found that

these plaintiffs had failed to allege a disparate impact claim because the newly filed charges

failed to identify a neutral employment practice and alleged the "identical boilerplate allegations

of excessive subjectivity" as the earlier dismissed charges.  *Id*. at *5-6.  Thus, the plaintiffs had failed to exhaust their administrative remedies, and the Title VII disparate impact allegations were dismissed.  *Id*. at *6.

The charges of the plaintiffs here are strikingly similar to those of the *Welch* plaintiffs. Similar to the charge of "excessive subjectivity" in *Welch*, the plaintiffs here allege the application of "irrational and highly subjective" criteria.  So, rather than alleging a specific *neutral* employment policy that results in unintended but adverse consequences, *see Remien v. EMC Corp*, 2008 WL 821887 at *5 (N.D. Ill. 2008), the plaintiffs here instead allege a practice that results in *intended* consequences through the application of "irrational and highly subjective" criteria.   A neutral employment policy is the "cornerstone" of any disparate impact investigation.  *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2005).  When the challenged practice facially allows for consideration of subjective criteria when those criteria are unascertainable and undefined, it is not specific, not neutral, and (depending on the circumstances) likely not unintentional.

The fact that some of the charges contain the word "impact" does not transform them into assertions of disparate impact claims.  *See Teal v. Potter*, 559 F.3d 687, 692-93 (7th Cir. 2009) (determining that a claimant does not state a claim in an administrative charge by language alone without providing factual support); *Welch*, 2009 WL 2461119 at *6 (finding that an administrative charge failed to allege disparate impact even when it contained the phrase "disparate impact"); *see also Hackney v. Texas Dept. of Criminal Justice*, 2009 WL 2391232 (E.D. Tex. 2009) (ruling that using a legal term of art is not enough to preserve administrative claims).  Similarly, alleging that other members of the same race are affected does not save claims that do not identify a specific, facially neutral employment policy.  *See Gordon v. Peters*,

489 F.Supp.2d 729, 736 (S.D. Tex. 2007). Finally, the allegation of being subjected to tests that are "culturally biased," ¶ 8 of "EEOC Complaint Allegations," does not state a disparate impact claim because cultural bias is not a facially neutral employment policy. *See McClain v. Lufkin Industries*, 519 F.3d 264, 274 (5th Cir. 2008) (finding that a "cultural problem" cannot be understood as a neutral employment policy).

The plaintiffs' charges allege nothing more than disparate treatment. A charge that alleges disparate treatment and does not identify a neutral employment policy does not preserve a disparate impact claim. *Pacheco*, 448 F.3d at 791-92. Because the plaintiffs' EEOC charges did not contain a disparate impact claim, the plaintiffs did not administratively exhaust such a claim and cannot now maintain one. Accordingly, the City's motion to dismiss the Title VII disparate impact claims in the Amended Complaint is GRANTED.

**B. The plaintiffs' Title VII disparate impact allegations also fail to state a claim upon which relief can be granted.**

The City moves to dismiss the plaintiffs' disparate impact claims brought under Title VII and section 1983.[7] The plaintiffs respond that their Amended Complaint sufficiently alleges these claims by describing the circumstances under which the promotion tests were administered and stating that African-Americans were "impermissibly impacted." For the same reasons the plaintiffs' EEOC charges fail to assert disparate impact claims, the court finds that the Amended Complaint fails to allege disparate impact claims. The plaintiffs have not alleged a specific, facially neutral employment policy – a requirement for pleading a disparate impact claim under Title VII. For this reason as well, the City's motion to dismiss the disparate impact claims must be granted.

---

[7] The plaintiffs' disparate impact claims under section 1983 are addressed at section IV *infra.*

**C. Plaintiff Danny Anderson has failed to state a hostile environment claim.**

The City moves to dismiss plaintiff Danny Anderson's hostile work environment allegation for failure to state a claim. Mr. Anderson responds that the "notice pleading standard" requires only a short and plain statement showing that the pleader is entitled to relief. (Pls.' Resp. at 14).

The totality of Mr. Anderson's hostile work environment claim is contained in one sentence in paragraph 34 of the Amended Complaint: "Plaintiff Danny Anderson was also denied promotion to a Helicopter Pilot position and was subjected to harassment and a hostile work environment by his supervisor, Sgt. James Todd because of his race."

The court agrees that Mr. Anderson has failed to state a claim for a hostile work environment. Mr. Anderson's one sentence allegation is exactly the type of conclusory allegation that is not entitled to the assumption of truth and should be rejected. *See Iqbal*, 129 S.Ct. at 1951. Merely alleging that a plaintiff has been subjected to "harassment" does not put a defendant on notice of the claims asserted against him. Accordingly, the court GRANTS the City's motion to dismiss Mr. Anderson's hostile work environment claim.

**IV.    Disparate Impact Claims Brought Under Section 1983**

In determining whether plaintiffs have stated a claim for disparate impact under section 1983, the court is mindful that there is no exhaustion requirement for section 1983 claims as there is for Title VII claims. *See Lawson v. Metropolitan Sanitary District of Greater Chicago*, 102 F.R.D. 783, 790 (N.D. Ill. 1983). Thus, the court must consider whether the plaintiffs have stated a disparate impact claim under section 1983 separately from the foregoing analysis. Even so, a disparate impact theory of liability is not available under section 1983. *Dugan v. Ball State University*, 815 F.2d 1132, 1135-36 n.1 (7th Cir. 1987); *Armstrong v. Chicago Park District*, 693 F.Supp. 675, 678 (N.D. Ill. 1988); *see Bennett v. Roberts*, 295 F.3d 687, 699 (7th Cir. 2002) (to

prevail on section 1983 claim, applicant must prove that the government engaged in intentional discrimination).  The City's motion to dismiss the plaintiffs' disparate impact claims brought under 42 U.S.C. § 1983 is therefore GRANTED.

## V.   Section 1981 Claims

The City contends that the plaintiffs' claims brought under 42 U.S.C. § 1981[8] must be dismissed because section 1981 does not provide a separate cause of action against local government entities.  The NAACP relies on cases from another circuit and one from a district court in Wisconsin that allowed section 1981 claims against government entities.

The Supreme Court held in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), that section 1983 constitutes the exclusive remedy against state actors for section 1981 violations.  Following the *Jett* decision, the Civil Rights Act of 1991 amended section 1981, and courts were faced with the issue of whether these amendments overturned *Jett*.  This court has held that the 1991 amendments did not affect the holding in *Jett,* and that section 1983 remains the sole avenue of relief against state actors for alleged violations of section 1981.  *See Tevebaugh v. City of Indianapolis*, 2010 WL 987726 (S.D. Ind. Mar. 15, 2010); *McPhaul v. Bd. of Comm'rs of Madison Co.*, 976 F.Supp. 1190, 1192-95 (S.D. Ind. 1997).  As *Tevebaugh* recounted, a majority of circuit courts and the Northern District of Indiana have reached the same conclusion.  *McGovern v. City of Philadelphia,* 554 F.3d 114, 118-21 (3d Cir. 2009); *Arendale v. City of Memphis,* 519 F.3d 587, 598-99 (6th Cir. 2008), *reh'g denied; Bolden v. City of Topeka, Kansas,* 441 F.3d 1129, 1137 (10th Cir. 2006); *Oden v. Oktibbeha County,* 246 F.3d 458, 462-65 (5th Cir.  2001); *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995); *Sims v. Fort Wayne Cmty. Schs.,* 2005 WL 3801461 at *8-9 (N.D.Ind. Feb. 2, 2005).

---

[8]  Count I seeks relief under section 1981 for police officers, and Count IV seeks that relief for firefighters.

The plaintiffs have not presented any argument with respect to the legal viability of their section 1981 claims that have not previously been rejected. This court affirms its prior decisions that section 1983 remains the only avenue of relief against state actors for violation of rights contained in section 1981. Thus, the court GRANTS the City's motion to dismiss the plaintiffs' section 1981 claims.

## VI.   ADEA Claim

The City also moves to dismiss plaintiff John Walton's Age Discrimination in Employment Act ("ADEA") claim. Similarly to Mr. Anderson, Mr. Walton responds that the court should consider only whether the defendants have been placed on notice of the ADEA claim. (Pls.' Resp. at 15).

Mr. Walton's ADEA claim is alleged in paragraph 40 of the Amended Complaint. Paragraph 40 states: "That in addition to the allegations stated in paragraph 37 [describing the content of EEOC charges filed by Mr. Walton and other police officers], Walton also alleged that points were deducted for use of sick time and that this had a disparate impact on older officers."

The court is mindful that at this stage it is reviewing only the sufficiency of the allegations of the Amended Complaint and not the merits of Mr. Walton's claim. *United States v. Clark County, Ind*., 113 F.Supp.2d 1286, 1290 (S.D. Ind. 2000). Mr. Walton does specify the City's actions that form the basis for his allegation. Paragraph 40 claims that deducting points for use of sick time in the promotions process has an impermissible impact on older officers. Although he omits two important elements of an ADEA claim (alleging that he is a member of the protected class and that younger members were not adversely affected), Mr. Walton need only allege sufficient facts to provide the defendants with notice of the substance of the facts that he asserts against them. *See James v. Heartland Health Services*, 2005 WL 678732 at *2-3

(N.D. Ill. 2005).  Because Mr. Walton has, albeit in a limited fashion, gone beyond mere conclusory allegations and has identified the specific conduct alleged to violate the ADEA, his claim suffices to place the City on notice.

The court does deem it advisable to clarify the claim it finds cognizable here.  Mr. Walton has used the phrase "disparate impact" and does not make any claim of intentional misconduct necessary to allege a disparate treatment claim.  *See Smith v. City of Jackson*, 544 U.S. 228, 231 (2005) (distinguishing between disparate impact and disparate treatment ADEA claims).  Thus, we conclude that Mr. Walton has alleged only a disparate impact claim under the ADEA and DENY the City's motion to dismiss Mr. Walton's ADEA claim.

**VII.   Individual and Official Capacity Claims Against Mayor Ballard and Chief Spears**

   **A.  Individual Capacity Claims**

The City moves to dismiss individual capacity claims against Mayor Ballard and Chief Spears on the grounds that the plaintiffs failed to state claims against them, or in the alternative, that they are entitled to qualified immunity.  The plaintiffs made no response to the City's arguments. Again, plaintiffs' failure to respond to the City's argument alone is a sufficient basis for dismissing any individual liability claims against Mayor Ballard and Chief Spears.  *See Mink v. Barth Elec. Co., Inc.*, 685 F.Supp.2d 914, 935 (S.D. Ind. 2010).

The allegation against Mayor Ballard consists of the repeated claim, "[u]nder the leadership of Mayor Ballard there has been a significant setback in the diversity of the [IMPD or IFD (as applicable)]."  (Am. Compl., ¶¶ 51, 71, 86, 101).  The allegation against Chief Spears is not any claim at all, but only a recital that he "is the current Chief of IMPD…"  (Am. Compl., ¶ 10).  There are no allegations that either Mayor Ballard or Chief Spears engaged in misconduct. The recitals in the Amended Complaint against these two individual defendants do not satisfy even basic requirements of notice pleading.  It is unclear whether plaintiffs even intend to assert

individual capacity claims against Mayor Ballard and Chief Spears.[9]  To the extent any individual capacity claims are made against Mayor Ballard and Chief Spears, the motion to dismiss those claims is GRANTED.[10]

### B.  Official Capacity Claims

The City also moves to dismiss any alleged official capacity claims against Mayor Ballard and Chief Spears.  Naming people in their "official capacities" is redundant because, "insofar as they acted in their 'official' capacities, they *are* the City (or the agency)."  *Myles v. City of Indianapolis*, 213 F.Supp.2d 962, 967 (S.D. Ind. 2002) (emphasis in original). Accordingly, the Court GRANTS the City's motion and dismisses any and all official capacity claims made by the plaintiffs against Chief Spears and Mayor Ballard.

### VIII.   **Count II of the Amended Complaint**

Count II of the plaintiffs' Amended Complaint alleges that the merger of the Indianapolis Police Department with the Marion County Sheriff's Department, creating the IMPD, had an adverse discriminatory effect on African-American police officers in terms of pension benefits. The plaintiffs allege that the Sheriff's Department, whose officers are predominantly Caucasian, had a more lucrative pension plan than the Indianapolis Police Department.  In the merger, the officers in the former Sheriff's Department were allowed to keep their pension plan, creating a disparate effect on African-American officers in the IMPD.

The City moves to dismiss Count II on the grounds that when IMPD was created and until March 1, 2008, IMPD was under the control of Marion County Sheriff Frank Anderson. According to the City, this means that any complaint about disparate effect flowing from the

---

[9]  If the plaintiffs did not intend to allege any individual liability claims against Mayor Ballard and Chief Spears, they should have said so in their response brief.

[10]  The court therefore does not need to address the City's qualified immunity argument.

merger and creation of IMPD necessarily must be brought only against the Sheriff's Department and Sheriff Frank Anderson.  Again, plaintiffs did not respond to the City's arguments.

In what might be deemed an excess of caution, the court finds that it would be premature to dismiss Count II.  It is not clear that the City cannot be a proper defendant in Count II, and the City does not contend that Count II is deficient under *Twombly*.  Further developments in this case may flesh out the legal bases for Count II and the City's defenses, which neither side has yet clearly articulated.  For now, we shall let it stand.

<u>Conclusion</u>

The court GRANTS in substantial part the City's motion for partial judgment on the pleadings.  All claims by the NAACP are dismissed because the NAACP lacks standing.  The plaintiffs' state constitutional claims for damages are dismissed.  All claims under 42 U.S.C. § 1981 are dismissed.  All disparate *impact* claims under 42 U.S.C. § 1983 and Title VII are dismissed.  All claims against Mayor Ballard and Chief Spears are dismissed.  Plaintiff Danny Anderson's hostile work environment claim is dismissed.  The Title VII disparate treatment claims by plaintiffs Grissom, Young, Rowley, Moore, Bell, Williams, and Mills are dismissed.

The claims remaining in this case are: (1) the plaintiffs' state constitutional claims in Counts I and IV, but only to the extent they seek injunctive relief; (2) Count II relating to pension benefits; (3) the plaintiffs' Section 1983 claims, but only to the extent they are disparate treatment claims, described in Counts III and V; (4) the Title VII disparate treatment claims alleged in Count VI by plaintiffs Danny Anderson, Ron Anderson, Adams, Burns, Burke, Coleman, Davenport, Finnell, Green, Hanks, Harris, Jefferson, Knight, Maddrey-Patterson,

Passon, Steward, Simmons, Taylor, Tracy, Walton and White;[11] and (5) plaintiff Walton's

ADEA claim.

So ORDERED.

Date: ___09/16/2010_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Beth Ann Dale
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
bdale@indygov.org

Gregory P. Gadson
LEE COSSELL KUEHN & LOVE LLP
ggadson@nleelaw.com

Jennifer Lynn Haley
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jhaley@indy.gov

Wayne C. Kreuscher
BARNES & THORNBURG LLP
wayne.kreuscher@btlaw.com

Nathaniel  Lee
LEE COSSELL KUEHN & LOVE LLP
nlee@nleelaw.com

Cherry  Malichi
LEE COSSELL KUEHN & LOVE LLP
cmalichi@nleelaw.com

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org

---

[11]  The plaintiffs' response brief states that plaintiffs Garza and Womock are not making Title
VII claims.  (Pls.' Resp. at 11).

26