UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KENDALE L. ADAMS, et al., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | 1:09-cv-175-SEB-DML |
| CITY OF INDIANAPOLIS, | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is now before the Court on Defendant's Motion for Summary Judgment [Docket No. 164], filed on June 27, 2011.[1] We dismissed a number of Plaintiffs' original claims in our September 16, 2010 Order Granting in Part Defendant's Motion for Judgment on the Pleadings. The remaining claims, all of which are addressed in the instant motion, are the following: (1) Plaintiffs' claims of intentional race discrimination arising from the Marion County Sheriff Department's administration of their pension plan; (2) Plaintiffs Danny Anderson, Ron Anderson, Adams, Burns, Burke, Coleman, Davenport, Finnell, Green, Hanks, Harris, Jefferson, Knight, Maddrey-Patterson, Passon, Steward, Simmons, Taylor, Tracy, Walton, and White's disparate treatment claims

---

[1] On June 7, 2011, Plaintiffs filed a Motion for Certificate of Appealability [Docket No. 160], requesting that the Court certify the following rulings for interlocutory appeal pursuant to 28 U.S.C. § 1292(b): (1) Docket No. 135 and (2) Docket No 159. For the reasons detailed below, we GRANT Defendant's Motion for Summary Judgment in its entirety; therefore, Plaintiffs' motion is DENIED AS MOOT, because the entire case can now be appealed.

brought pursuant to Title VII; (3) all Plaintiffs' disparate treatment claims brought pursuant to 42 U.S.C. § 1983; (4) Plaintiff Walton's discrimination claim brought pursuant to the Age Discrimination in Employment Act ("ADEA"); and (5) all Plaintiffs' state constitutional claims for injunctive relief. For the reasons detailed in this entry, we GRANT Defendant's Motion for Summary Judgment.

## Factual Background[2]

**Formation of the Indianapolis Metropolitan Police Department**

In 2006, the Indianapolis Police Department ("IPD") and 400 deputies from the Marion County Sheriff's Department ("MCSD") were consolidated into a single law enforcement department thereafter referred to as the Indianapolis Metropolitan Police Department ("IMPD"). The IMPD was overseen by former Marion County Sheriff Frank Anderson from its inception in 2006 through March 1, 2008, at which point supervision was transferred to Defendant, the City of Indianapolis ("the City"). Prior to the consolidation, the MCSD had determined that all 400 of its deputies would retain their pension plan benefits to which each had contributed during their tenures with the MCSD.

**IPD/IMPD Promotional Processes**

The three merit ranks that IMPD officers can seek to achieve during their careers with the department are captain, lieutenant, and sergeant. In order to progress through

---

[2] For reasons detailed below, we find that Plaintiffs have waived a number of their remaining claims, including the IMPD Plaintiffs' pension discrimination claims and Plaintiff Walton's ADEA claims. Accordingly, we have not discussed the facts relevant to those waived claims.

2

these ranks, an IMPD officer must sign up for and participate in a promotional process. During the time period relevant to this lawsuit, the IPD/IMPD offered three such promotional processes in 2004 (before the IMPD was created), 2006, and 2008. A Development Committee was established for each promotional process that was responsible for creating and overseeing the process. Each promotional process was comprised of the following three components: a written examination, an oral interview/assessment exercise, and the candidate's personnel profile. All members of the IPD/IMPD were notified of the processes at the same time and in the same manner and all candidates who were eligible to participate were given the same amount of time to sign up for the process. The Development Committees for each process created an Information Booklet relating to each of the merit ranks that outlined the specifics of the promotional process. All candidates who participated in the promotional processes were given a copy of the Information Booklet at the time they completed the sign-up procedure.

  After each promotional process was completed, post-test review sessions were held for all ranks tested at which candidates were given the opportunity to review the promotion materials and ask questions or state any concerns they may have had with the process. Each candidate who chose to attend the post-test review session was given a copy of his or her written examination answer sheet, a list of the written test questions that he or she answered incorrectly, a reference of the source for each written question on the examination, a copy of the oral interview and assessment exercises rating anchors, and a listing of the overall score received for each assessment or rating. After reviewing

those materials, candidates were permitted to submit written appeals if they believed their score had been affected by a procedural difficulty, such as the quality or substance of the testing materials, the procedures used during the testing process, the conduct of raters, or the conduct of the process staff. However, candidates were not permitted to appeal their individual interview and/or assessment scores merely because they believed their scores should have been higher.

**2008 IMPD Promotions**

In 2008, a total of eight IMPD officers were promoted to the rank of captain. Seven of the eight were promoted on March 5, 2008, as a result of the IMPD's 2006 promotional process and one officer was promoted on September 3, 2008, following the 2008 process. None of the IMPD Plaintiffs participated in the 2006 promotional process for captain; therefore none of them were eligible for the March 5, 2008 promotions to captain. The only IMPD officer promoted to the rank of captain on September 3, 2008 following the 2008 promotional process was Caucasian and received the highest total score of the officers eligible for promotion, which was 78.82.[3] Plaintiffs Walton and Coleman – the only two plaintiffs eligible for promotion to captain – were ranked sixteenth and seventeenth with scores of 67.42 and 64.83, respectively.

Twelve IMPD officers (eleven Caucasian, one African-American) were promoted

---

[3] Additional promotions to captain were made on October 6, 2010 and December 29, 2010, after this lawsuit was filed. The four officers who were promoted in 2010 were ranked second through fifth with scores of 78.49, 75.09, 74.72, and 74.60. Because Plaintiffs did not amend their pleadings to include disparate treatment claims for promotions that were made after 2008, we need not further address these promotions.

to the rank of lieutenant as a result of the 2008 process, nine of whom were promoted on March 5, 2008, with the remaining three officers promoted to lieutenant on April 2, 2008. The twelve officers promoted received the top twelve scores in the promotional process, ranging from 84.96 to 78.76. Plaintiffs Knight, Taylor, Steward, Hanks, Jefferson, Young, and Burke were all eligible to be promoted to lieutenant in 2008, but none received a promotion. These Plaintiffs received scores of 78.23 (14th), 77.51 (16th), 76.19 (21st), 74.40 (26th), 73.95 (28th), 71.97 (40th), and 70.09 (50th), respectively.

Twenty-one officers were promoted to the rank of sergeant: nine on March 5, 2008 and twelve on May 7, 2008. The officers promoted on March 5, 2008 were as follows: the top six scoring officers, all of whom were Caucasian, who received scores ranging from 88.06 to 78.59; the fifteenth and the seventeenth ranked officers, both Caucasian, who received scores of 76.95 and 75.90, respectively; and Plaintiff Finnell, who was ranked twenty-eighth with a score of 73.52.[4] All of the remaining officers in the top twenty who did not receive promotions on March 5 were promoted on May 7, 2008. These officers – all Caucasian – posted scores ranging between 77.88 and 74.99. Plaintiffs Adams, Green, Mills, Rowley, Bell, and Moore were all eligible for promotion to sergeant in 2008, but they did not receive promotions. Plaintiffs received scores of 71.83 (36th), 71.14 (42nd), 69.79 (49th), 69.40 (53rd), 68.44 (55th), and 66.29 (75th),

---

[4] Plaintiff Finnell was the only eligible plaintiff who received a promotion in 2008.

respectively.[5]

**Indianapolis Fire Department Promotional Processes**

The three merit ranks that firefighters in the Indianapolis Fire Department ("IFD") can earn during their tenures with the department are battalion chief, captain, and lieutenant. In order to progress through these ranks, a firefighter must sign up for and participate in a promotional process. During the time period relevant to this lawsuit, the IFD offered two promotional processes: the first in 2004 and the second in 2007. Each process was comprised of four components, to wit, a written examination, an oral interview, a practical exercise, and the candidate's "personnel profile." All members of the IFD were notified of the processes at the same time and in the same manner and all candidates who were eligible to participate were given a set amount of time to sign up for the process.[6] Each candidate who chose to be a part of the promotional process in 2004 and/or 2007 were given a copy of an Information Booklet, which outlined the specifics of

---

[5] The remaining IMPD Plaintiffs (Danny Anderson, Burns, Davenport, Harris, Maddrey-Patterson, and Williams) were not eligible to be promoted in 2008 because none of these officers participated in the 2008 promotional process for the rank of captain or in the 2006 promotional processes for the ranks of lieutenant or sergeant.

[6] The sign-up period for eligible candidates for the 2007 promotional process was originally set to run from July 16, 2007 through August 31, 2007. However, after the original sign-up period ended, the 2007 Development Committee reevaluated the components of the process as well as the manner in which each component was weighted and decided to modify certain criteria, namely, the amount of time required to earn full credit for seniority in each rank. As a result of that change, pages one through eight of the Information Booklets for each rank were updated. All IFD candidates who had previously registered for the 2007 process and still wanted to participate following the change were required to re-register between September 19, 2007 and October 8, 2007. At that time, each candidate was given the updated pages to the Information Booklet corresponding to the rank for which he or she was applying.

the promotional process for the rank for which he or she was applying.

After each promotional process was completed, post-test review sessions were held for all ranks tested at which candidates were given the opportunity to review the promotion materials and ask questions or state any concerns they may have had with the process. Each candidate who chose to attend the post-test review session was given a copy of his or her written examination answer sheet, a list of the written test questions that he or she answered incorrectly, a reference to the source for each written question on the examination, a copy of the oral interview and assessment exercises rating anchors, and a listing of the overall score received for each assessment or rating. After reviewing those materials, candidates were permitted to submit written appeals if they believed their score had been affected by a procedural difficulty, such as the quality or substance of the testing materials, the procedures used during the testing process, the conduct of raters, or the conduct of the process staff. However, candidates were not permitted to appeal their individual interview and/or assessment scores merely because they believed their scores should have been higher.

**2008 IFD Promotions**

In 2008, ten firefighters were promoted to the rank of battalion chief, nine firefighters were promoted to the rank of captain, and twenty-five firefighters were promoted to the rank of lieutenant. All of these promotions were made between April 25, 2008 and April 28, 2008. Each of the IFD Plaintiffs – Ron Anderson, Tracy, Passon, Garza, White, Simmons, Grissom, and Womack – were eligible to be promoted in 2008,

7

but none were selected for promotions.

The top ten scoring candidates for battalion chief were promoted in April 2008.[7] Of the ten candidates who received promotions, eight were Caucasian and two were African-American. Their scores ranged from 84.068 to 76.787. Plaintiff Anderson, the only plaintiff eligible for promotion to battalion chief in 2008, was ranked nineteenth, with a score of 74.204. The nine captain candidates who were promoted in 2008[8] received the top nine scores, ranging from 86.299 to 80.839. Seven of those candidates were Caucasian and two were African-American. Plaintiffs Tracy, Passon, Garza, White, and Simmons were all on the list of eligible candidates, but none received promotions. Their scores were 75.116 (25th), 75.015 (26th), 73.903 (31st), 66.999 (51st), and 58.589 (66th), respectively. The top twenty-seven candidates eligible for a promotion to lieutenant were promoted in 2008,[9] which included six African-American and twenty-one Caucasian firefighters. Their scores ranged from 89.686 to 83.043. Plaintiffs Womock and Grissom were both eligible for promotion to lieutenant, but neither was promoted. They received scores of 80.743 (42nd) and 78.174 (61st), respectively.

---

[7] Three additional Caucasian candidates were promoted in 2009, after this lawsuit was filed. They were ranked eleventh through thirteenth and had scores ranging from 76.300 to 75.926.

[8] In 2009, after this lawsuit was filed, six additional promotions to captain were made. The candidates who received promotions had received the next six highest scores, which ranged from 79.457 to 78.070. Five of the individuals were Caucasian and one was African-American.

[9] One additional Caucasian candidate was promoted in 2009, who was ranked twenty-eighth, with a score of 83.021.

As a result of these promotional decisions, Plaintiffs have brought disparate treatment claims pursuant to Title VII and § 1983, alleging that Defendant intentionally discriminated them in making its decisions regarding promotions. On June 27, 2011, Defendant filed the instant summary judgment motion.

## Legal Analysis

### I. Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

The summary judgment standard is applied rigorously in employment discrimination cases, because intent and credibility are such critical issues and direct evidence is rarely available. Seener v. Northcentral Technical Coll., 113 F.3d 750, 757 (7th Cir. 1997); Wohl v. Spectrum Mfg., Inc., 94 F.3d 353, 354 (7th Cir. 1996). To that end, we carefully review affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination. However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997).

## II. Waived Claims

In their response brief, Plaintiffs respond to the majority of Defendant's arguments with nothing more than one or two conclusory statements, entirely omitting any citation to the record or legal authority. These cursory responses are insufficient to demonstrate the existence of a genuine issue of material fact necessary to defeat a proper motion for summary judgment. Plaintiffs have utterly failed to develop these claims in their briefing, and we remind them that it is not the responsibility of the Court to develop these arguments for them. Judge v. Quinn, 612 F.3d 537, 557 (7th Cir. 2010) ("[I]t is not the obligation of [a] court to research and construct legal arguments open to parties, especially when they are represented by counsel.") (citation omitted). It is well-settled under Seventh Circuit law that "'perfunctory and undeveloped arguments, and arguments

11

that are unsupported by pertinent authority, are waived.'" Id. (quoting United States v. Holm, 326 F.3d 872, 877 (7th Cir. 2003)). Accordingly, we GRANT Defendant's Motion for Summary Judgment on the following claims: Plaintiffs' race discrimination claim relating to the administration of their pension plan; Plaintiff Finnell's discrimination claims brought pursuant to Title VII and § 1983; Plaintiff Walton's ADEA claim; and Plaintiffs' state constitutional claims for injunctive relief.

## III. Statute of Limitations

As a result, the only remaining claims in this case are Plaintiffs' § 1983 claims and the Title VII claims of Plaintiffs Danny Anderson, Ron Anderson, Adams, Burns, Burke, Coleman, Davenport, Green, Hanks, Harris, Jefferson, Knight, Maddrey-Patterson, Passon, Steward, Simmons, Taylor, Tracy, Walton, and White. Specifically, Plaintiffs allege that they received disparate treatment as a result of the IMPD's and IFD's promotional processes. Before turning to the merits of these claims, we shall first address Defendant's contention that Plaintiffs' disparate treatment claims, brought pursuant to § 1983 and Title VII seeking relief for promotional decisions that occurred in 2005 and 2006, are outside the applicable statute of limitations, and thus, procedurally barred.[10] Plaintiffs have again failed to adequately respond to this argument. In their response, without citation to any authority, Plaintiffs state only that their "disparate treatment

---

[10] As a result of the IPD's 2004 promotional process, the last promotions from the eligibility list for the ranks of lieutenant and sergeant were made on January 20, 2005. The last promotions made from the IFD's 2004 promotions list were on December 21, 2006.

claims are not time barred, as they have demonstrated a continuing pattern of discrimination." Pls.' Resp. at 8. However, again pursuant to well-established Seventh Circuit law, a failure to promote, which is the substance of Plaintiffs' charges of discrimination, is a discrete incident of discrimination to which the continuing violation doctrine does not apply. See Pruitt v. City of Chicago, Illinois, 472 F.3d 925, 927 (7th Cir. 2006); Davidson v. Citizens Gas & Coke Utility, 470 F. Supp. 2d 934, 949-50 (S.D. Ind. 2007). Plaintiffs have failed to put forth any argument to persuade the court that their claims somehow are distinguishable from this clear precedent, nor do they challenge the fact that the applicable limitations periods for claims brought pursuant to § 1983 is two years or that a charge of employment discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice.

Accordingly, we GRANT Defendant's Motion for Summary Judgment on all disparate treatment claims brought pursuant to § 1983 that relate to promotions made in 2005 and 2006 as those promotions occurred more than two years before Plaintiffs filed the instant litigation. The designated evidence also shows that Plaintiffs Burke, Burns, Coleman, Hanks, Taylor, Davenport, Green, Ron Anderson, Tracy, Passon, White, and Simmons failed to file their EEOC charges within 300 days of promotions made in 2005 and 2006. Thus, we GRANT Defendant's Motion for Summary Judgment on their Title VII claims based on those promotions.

**IV. Disparate Treatment Claims for 2008 Promotional Decisions**

Plaintiffs allege that they suffered disparate treatment as a result of the promotions

of Caucasian police officers and firefighters put into effect in 2008 from lists that were generated by the IMPD's 2006 and 2008 promotional processes and the IFD's 2007 process, in violation of Title VII and the Equal Protection Clause of the Fourteenth Amendment. Under these laws (including specifically, § 1983) a plaintiff may prove discrimination either via direct evidence of discrimination or indirectly through the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Scaife v. Cook County, 446 F.3d 735, 739 (7th Cir. 2006). The parties here have limited their analysis solely to the indirect method, so we follow their lead and discuss only that method of proof.

The indirect method of proving discrimination applies similarly to claims brought under Title VII and § 1983. Rodgers v. White, 657 F.3d 511, 517 (7th Cir. 2011) (citation omitted). To survive summary judgment under this framework, a plaintiff must begin by establishing a *prima facie* case of discrimination. If such a showing can be established, the burden shifts to the defendant to articulate a nondiscriminatory reason for the actions it took against the plaintiff. If the defendant succeeds in offering a legitimate, nondiscriminatory reason for the employment decision, the burden reverts to the plaintiff to show that there is a genuine dispute of material fact that the proffered reason for the employment action is pretextual. Naik v. Boehringer Ingelheim Pharmaceuticals, Inc., 627 F.3d 596, 599-600 (7th Cir. 2010) (citations omitted).

To establish a *prima facie* case of race discrimination based on a failure to promote, a plaintiff must show: (1) that he belongs to a protected class; (2) that he was

14

qualified for the position; (3) that he was rejected for the position sought; and (4) that the position was given to a person outside of the protected class who is similarly or less qualified than the plaintiff. Jordan v. City of Gary, Ind., 396 F.3d 825, 833 (7th Cir. 2005) (citations omitted). It appears from the briefing that the only element of the *prima facie* case that is disputed in this context is whether the Caucasian police officers and firefighters who received promotions are similarly situated to Plaintiffs. Accordingly, we focus our discussion on this element.

Defendants argue that, because Plaintiffs all received lower scores than the Caucasian and African-American applicants who received promotions, they have failed to establish that they were similarly qualified for the positions. It is undisputed that every plaintiff scored lower than the candidates who were promoted as a result of the 2007 and 2008 promotional processes.[11] Plaintiffs nevertheless maintain that they have established a *prima facie* case of discrimination because the differences in point values among all of the applicants are sufficiently minimal as to be inconsequential. Thus, they argue that the closeness of the scores indicates that Plaintiffs were in fact similarly qualified to those who were selected for promotion.

It is true that with respect to at least some of the plaintiffs the differences in point values between their scores and the lowest scoring applicants who were promoted were minimal or even negligible. However, even if we assume that the closeness of the scores

---

[11] Plaintiff Finnell actually received a promotion despite scoring lower than certain individuals who were not promoted.

creates a genuine issue of material fact as to whether certain plaintiffs were similarly qualified to candidates who did receive promotions, our inquiry does not end there. The evidence establishes that the IMPD and the IFD must limit the number of promotions that occur after each process because of budgetary concerns and other staffing issues. Thus, it is clear that not all qualified candidates who apply can receive promotions. An employer has discretion to choose among equally qualified candidates as long as its decision is not based on unlawful criteria. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 259 (1981). Here, Defendant has met its burden of providing a legitimate, non-discriminatory reason for its promotional decisions, to wit, that it made the promotions based on the final scores and ranks that were achieved by the promotion candidates and without regard to race.

Plaintiffs have failed to come forth with any evidence establishing that Defendant's reliance on the candidates' scores in making its promotional decisions was merely a pretext for discrimination. In all but one case, Defendant simply promoted the top-scoring candidates and those promoted included both Caucasian and African-American applicants. The only exception was Plaintiff Finnell's promotion. He was one of twenty-one IMPD candidates promoted to sergeant despite having the twenty-seventh best score. However, because Plaintiff Finnell is African-American, the fact that he was promoted over Caucasian candidates who received higher scores does not support Plaintiffs' contention that Defendant was intentionally discriminating *against* minority applicants.

16

Plaintiffs cursorily allege that components of the promotional processes are "arbitrary" and "without any nexus to the job content or duties, the knowledge, skills or abilities needed for the job, or any other meaningful job-related criteria," (Pls.' Resp. at 3),[12] but they do not specify which components they are challenging or how those components are racially discriminatory or reveal a racially discriminatory animus. Instead, Plaintiffs rely almost exclusively on non-expert statistical evidence regarding the relatively small percentage of African-Americans who are promoted in the IMPD and IFD, compared to the overall percentage of African-Americans working in those departments, in an effort to prove their claims. However, the Seventh Circuit has rejected such efforts to use statistics as the primary means of establishing discrimination in disparate treatment situations. See Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 349 (7th Cir. 1997) ("[S]tatistics are improper vehicles to prove discrimination in disparate treatment (as opposed to disparate impact) cases. ... Standing virtually alone, ... statistics cannot establish a case of individual disparate treatment.") (citations and internal quotations omitted).

It is true that, "[i]n conjunction with other evidence of disparate treatment ... statistics can be probative of whether the alleged disparity is the result of discrimination."

---

[12] Plaintiffs cite to an excerpt from the deposition of former IMPD Chief Michael Spears in support of this allegation. However, the cited portion of Chief Spears's deposition testimony, merely states that when he himself participated in the promotional processes as he was coming up in the police department, his personal belief was that some components of the tests had "little relevance" to the work of the police department. Spears Dep. at 31. He further testified that the processes have been changed since that time. Therefore, we accord no weight to this testimony because it has no relevance to the promotional processes at issue in this litigation.

Bell v. E.P.A., 232 F.3d 546, 552-53 (7th Cir. 2000) (citations omitted).  Here, however, Plaintiffs have failed to properly develop any other compelling evidence of disparate treatment so that the statistical evidence, standing alone, falls short of Plaintiffs' goal to survive summary judgment.  Accordingly, we GRANT Defendant's Motion for Summary Judgment as to Plaintiffs' disparate treatment claims brought pursuant to Title VII and § 1983.

## V. Conclusion

For the reasons detailed above, Defendant's Motion for Summary Judgment is GRANTED in its entirety.  Plaintiffs' Motion for Certificate of Appealability is DENIED AS MOOT.  Final judgment shall enter accordingly.

IT IS SO ORDERED.

Date: _____03/13/2012_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Beth Ann Dale
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
bdale@indygov.org

Gregory P. Gadson
LEE COSSELL KUEHN CROWLEY & TURNER LLP
ggadson@nleelaw.com

Wayne C. Kreuscher
BARNES & THORNBURG LLP
wayne.kreuscher@btlaw.com

Nathaniel Lee
LEE COSSELL KUEHN CROWLEY & TURNER LLP
nlee@nleelaw.com

Cherry Malichi
LEE COSSELL KUEHN CROWLEY & TURNER LLP
cmalichi@nleelaw.com

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org